IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

HEATHER SHOBE,

                       Plaintiff,                    Case No. 3:07 CV 1783

    -vs-

                                                      MEMORANDUM OPINION

SENECA COUNTY SHERIFF'S
OFFICE, et al.,

                       Defendant.

KATZ, J.

This matter is before the Court on the defendants' motion for summary judgment (Doc. 7).

**I.    Background**

Plaintiff Heather Shobe initiated this action against Defendants Seneca County Sheriff's Office and other unknown law enforcement officers on May 17, 2007 in the Ohio Court of Common Pleas for Seneca County. Doc. 7, Attachment 1, Exhibit A. Defendants removed the suit to this Court on June 15, 2007. Doc. 1. The complaint alleges Ohio state law claims of negligence, false imprisonment, intentional infliction of emotional distress, and violation of Ohio Rev. Code § 2705.04. Additionally, Plaintiff asserts claims against Defendants under 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments for violating her civil rights. Doc. 7, Attachment 1, Exhibit A, 2, 18, 24; Doc. 8 at 7-8.

On November 30, 2006, the Ohio Court of Common Pleas found Plaintiff to be in contempt of a court order unrelated to this matter. Doc. 7 at 3; Doc. 7, Attachments 3-4, Exhibits C-D. Plaintiff's citation for contempt constituted a minor misdemeanor. Doc. 7, Attachment 2, Exhibit B. Plaintiff failed to appear for the court-ordered contempt hearing on December 13,

2006, and a bench warrant was subsequently issued for Plaintiff's arrest on December 15, 2006. Doc. 7 at 3; Doc. 7, Attachment 5, Exhibit E.

On Friday, February 9, 2007 between 4:10 and 4:30 p.m., Plaintiff voluntarily appeared at the Seneca County Sheriff's Office after being told over the phone that deputies had "some papers" to give her. Doc. 7 at 4, Doc. 8, p. 3; Doc. 8, Attachment 1, Exhibit 1, 2. At 4:30 p.m., a Seneca County Sheriff's Deputy arrested Plaintiff under the warrant and placed her in the Seneca County Jail. Doc. 7 at 4; Doc. 8, p. 2-3. Because the Seneca County Courts closed at 4:30 p.m., Defendants did not complete the Return of Service on the warrant until Monday, February 12, 2007. Doc. 7 at 4, Attachment 7, Exhibit G. Then on Thursday, February 15, 2007, Judge Kelbley issued notice for Plaintiff's bond hearing to be held the next day, Friday, February 16 at 1:30PM. Doc. 7, Attachment 4, Exhibit H. At the bond hearing, the contempt citation was dismissed, and Plaintiff was ordered to be released. Doc. 8 at 3.

From Plaintiff's arrest on February 16 until Plaintiff was ordered released at her bond hearing exactly one week later, Plaintiff was never taken before a Judge or Magistrate for a bond hearing or for any other purpose or appearance. Doc. 7 at 4; Doc. 8 at 3. Instead, Plaintiff spent seven full days in the Seneca County Jail. *Id.* Plaintiff stated in her affidavit that she asked Defendant Sheriff's Deputies daily when she would be taken to court. Doc. 8 at 3; Doc. 8, Attachment 1, Exhibit 1, 6-7. She received various responses to this question, including being told that because the Judge signed the warrant she would not be in court until the Judge brought her to court. *Id.* Plaintiff also stated that on other occasions deputies would not respond to her question. *Id.* The Bench Warrant itself did not contain a bail provision. *See* Doc. 7, Attachment 4, Exhibit E.

Plaintiff instituted this action alleging that Defendants' failure to allow Plaintiff to post bail and Plaintiff's subsequent seven day detention constitute Ohio state law claims for negligence, false imprisonment, intentional infliction of emotional distress, and violation of Ohio Rev. Code § 2705.04. Furthermore, Plaintiff asserts claims against Defendants under 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments for violating her civil rights. Doc. 7, Attachment 1, Exhibit A, 2, 18, 24; Doc. 8 at 7-8. Defendants filed this motion for summary judgment on August 17, 2007, claiming they are immune from suit for both the state and federal claims. Doc. 7. For the reasons stated herein, Defendants' motion for summary judgment is granted in part, and denied in part.

**II.  Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (*citing 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III.    Discussion**

    **A.    Clarification of parties**

As a threshold matter, this Court must clarify the parties being sued by Plaintiff. The complaint names as defendants (1) the Seneca County Sheriff's Office, and (2) unknown law enforcement officers. There are two issues that arise with the named Defendants.

First, with regard to the unknown law enforcement officers (hereinafter Sheriff Defendants), the parties dispute whether Plaintiff named the Sheriff Defendants in their official and individual capacities, or in their official capacities only. Doc. 8 at 8; Doc. 9 at 2 n.3. This question is quickly resolved by referring to paragraph nine of the complaint (Doc. 7, Attachment 1, Exhibit A, 9), which reads: "The Defendants were acting as law enforcement officers in the scope of their employment for the Defendants at some times mentioned herein and at other times mentioned herein Defendants acted beyond the scope of their employment and acted under the color of law." *Id.* The language stating that "at other times mentioned herein Defendants acted beyond the scope of their employment and acted under color of law" clearly indicates that Plaintiff is suing the Sheriff Defendants in their individual capacities as well as in their official capacities.

The second issue is whether the Seneca County Sheriff's Office is a legal entity that can be sued. "A sheriff's department is not a legal entity, and is not a party that can be sued." *Pugh v. Allen Co. Sheriff's Dep't*, 2007 U.S. Dist. LEXIS 87898, at *7 (N.D. Ohio November 28, 2007); *see Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that "the Sheriff's Department is not a legal entity subject to suit") (citing *Kurz v. State of Mich.*, 548 F.2d 172, 174

5

(6th Cir. 1977); *Elam v. Montgomery County*, 573 F. Supp. 797, 804 (S.D. Ohio 1983) (holding that "the Defendant 'Sheriff's Office' is a subunit of Montgomery County, and appears not to be an entity, in and of itself, subject to suit"); *Brothers v. County of Summit*, 2007 U.S. Dist. LEXIS 38468, at *24 n.2, *73 (N.D. Ohio May 25, 2007) (noting that "a Sheriff's Department is not a party nor is it sui juris."). Therefore, Defendant Seneca County Sheriff's Office's motion for summary judgment is granted on all claims, and the only remaining defendants are the unknown Sheriff Defendants.

### B. Ohio State Law Claims

Plaintiff first claims that the Sheriff Defendants' failure to allow Plaintiff to post bail, as well as Plaintiff's subsequent seven day detention, constitutes Ohio state law claims for negligence, false imprisonment, intentional infliction of emotional distress, and violation of Ohio Rev. Code § 2705.04. Section 2705.04, titled "Right of accused to bail," states that:

> In proceedings under section 2705.02 of the Revised Code ["Acts in contempt of court"], if the writ is not returnable forthwith, the court may fix the amount of a bond to be given by the accused, with surety to the satisfaction of the sheriff. Upon the return of a writ, when it is not convenient to hear the charge without delay, the court shall fix the amount of a bond to be given, with surety to the satisfaction of the clerk of the court, for the appearance of the accused to answer the charge. On the execution of such bond, the accused shall be released from custody.

As noted earlier, since Plaintiff was arrested at 4:30PM on a Friday - the same time the courts close for the weekend - Defendants were unable to quickly return the warrant. However, Defendants correctly point that the warrant did not contain a bail provision, (Doc. 7 at 3), and that once the warrant was returned, the court did not issue notice of a bond hearing until Thursday, February 15. Doc. 7, Attachment 4, Exhibit H.

6

Notwithstanding Defendants' reasons for non-compliance with 2705.04, Plaintiff contends that Defendants were also required to let Plaintiff post bail under the Revised Code's "Proceedings upon arrest" provisions. Ohio Rev. Code § 2935.13; Doc. 8 at 11. Section 2935.13 requires that:

> Upon the arrest of any person pursuant to warrant, he shall forthwith be taken before the court or magistrate issuing the same, if such court be in session or such magistrate available, and proceedings had as provided in sections 2937.01 to 2937.46, inclusive, of the Revised Code. If such court be not in session and a misdemeanor or ordinance violation is charged, he shall be taken before the clerk or deputy clerk of the court and let to bail, as provided in sections 2937.22 to 2937.46, inclusive, of the Revised Code, if the magistrate be not available . . . he shall forthwith be taken before the most convenient magistrate, clerk, or deputy clerk of a court of record, and there let to bail for his appearance before the issuing court or magistrate within a reasonable time to be set by such clerk.

Thus, Plaintiff argues that the Revised Code required Defendants to allow Plaintiff to post bail, and their failure to do so constitutes negligence, false imprisonment, intentional infliction of emotional distress, and violation of Ohio Rev. Code § 2705.04.

### 1. Immunity

Despite Plaintiff's allegations, Defendants contend that they are immunized from suit on any of the above claims by Ohio's Political Subdivision Tort Liability Act. Doc. 7 at 7 (citing Ohio Rev. Code § 2744.01). A political subdivision is "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state . . . ." Ohio Rev. Code § 2744.01(F); accord 2743.01(B). Clearly, the County of Seneca is a political subdivision. However, Ohio case law is not settled as to whether a County Sheriff's Office, or the County Sheriff himself, should also be considered a political subdivision. *See Brothers*, 2007 U.S. Dist. LEXIS 38468, at *73 n.13 (noting that "Ohio's Tenth Appellate District has recognized the 'sheriff's department' as an extension of the 'county,'" while "Ohio's Twelfth District has accorded the 'Sheriff's Office'

7

recognition as 'a body corporate and politic.'"). Notwithstanding this confusion, federal courts in this District have held that "the sheriff [is] an employee of the political subdivision, i.e. the county." *Id.* (citing Ohio Rev. Code § 2744.01(B) ("'Employee' includes any elected or appointed official of a political subdivision."); *Waggoner v. Carsey*, 129 Ohio App. 3d 79, 83 (Ohio Ct. App. 6th Dist. 1998); *Simpson v. White*, 1997 Ohio App. LEXIS 613, (Ohio Ct. App. 12th Dist. Feb. 24, 1997); *Young v. Summit City*, 67 Ohio App. 3d 661, 663-64 (Ohio Ct. App. 9 Dist. 1990)). Moreover, sheriff's deputies are also employees of the county political subdivision. *Linley v. DeMoss*, 83 Ohio App. 3d 594, 599 (Ohio Ct. App. 10 Dist. 1992)**.** Immunity is provided for employees of political subdivisions under Ohio Rev. Code §2744.03(A)(6).

Despite this statutory grant of immunity, Plaintiff contends that Ohio Rev. Code § 2743.02 waives immunity for false imprisonment claims. Doc. 8 at 4-6. Plaintiff's analysis, however, is misguided. The issue in this case is political subdivision immunity under section 2744. Section 2743 deals with immunity of the State of Ohio.

> As used in this Chapter:
>
> (A) "State" means the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state. "State" does not include political subdivisions.
>
> (B) "Political subdivisions" means municipal corporations, townships, counties, school districts, and all other bodies corporate and politic responsible for governmental activities only in geographic areas smaller than that of the state to which the sovereign immunity of the state attaches.

Ohio Rev. Code § 2743.01; *see also* Ohio Rev. Code § 2744.01(F). Thus, the waiver of the state's immunity under 2743.01 is irrelevant for determining Defendants' political subdivision immunity in this case.

8

### 2. Individual Capacity Immunity

Because the Sheriff Defendants in the instant case are employees of a political subdivision, individual capacity immunity is properly analyzed under Ohio Rev. Code § 2744.03(A)(6). *See Cotton v. McFaul*, 1993 Ohio App. LEXIS 1956, at \*2 (Ohio Ct. App. 8th Dist. 1993) (holding that "Sheriff immunity is based on employee status"); *but see also Saunders v. McFaul*, 71 Ohio App. 3d 46 (Ohio Ct. App. 8th Dist. 1990) (holding sheriff was not included in definition of "political subdivision," but not considering whether sheriff was an employee). Section 2744.03 enumerates the tort liability of political subdivision employees, *see Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007); Cotton, 1993 Ohio App. LEXIS 1956, at \*2, and provides that employees are "immune from liability for acts or omissions made in connection with a governmental or proprietary function unless the acts and omissions were [(a)] manifestly outside the scope of employment or official responsibilities; [(b)] made with malicious purpose, in bad faith, or in a wanton reckless manner; or [(c)] a section of the Revised Code expressly imposes liability." *Cotton*, 1993 Ohio App. LEXIS 1956, at \*2 (citing Ohio Rev. Code § 2744.03(A)(6)). Thus, if the Sheriff Defendants were engaged in a governmental or proprietary function, and their conduct does not fall within one of the three exceptions listed above, they are immune in their individual capacities.

The operation of a county sheriff's office and the detention of individuals by a county sheriff are governmental functions falling within the statutory grant of immunity. *See Whitler v. McFaul*, 123 Ohio App. 3d 199, 204-05 (Ohio Ct. App. 8th Dist. 1997) (citing *Twine v. Franklin County Sheriff's Dep't*, 68 Ohio App. 3d 51, 55 (Ohio Ct. App. 10th Dist. 1990)).

With regard to the exception in 2744.03(A)(6)(c) - whether another section of the Revised Code expressly imposes civil liability on Defendants for not allowing Plaintiff to post bail - this Court finds that Defendants maintain immunity. As noted above, Plaintiff urges that Ohio Rev. Code § 2705.04 and Ohio Rev. Code § 2935.13 both imposed an affirmative obligation on Defendants to allow Plaintiff to post bail. Doc. 8 at 9, 11. However, whether the statutes cited by Plaintiff impose such an obligation is irrelevant for purposes of determining immunity. Instead, to abrogate immunity under (A)(6)(c), the statute requires that "civil liability is expressly imposed by a section of the Revised Code." Ohio Rev. Code § 2744.03(A)(6)(c). Moreover, the statute takes special care to explain that

> [c]ivil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee.

*Id.* Neither 2705.04 nor 2935.13 contains an express provision imposing civil liability. Therefore, Defendants' immunity is not abrogated by this exception.

Second, upon examination of the exception in 2744.03(A)(6)(a) - whether "the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities" - this Court finds that Defendants maintain immunity. "The Ohio state courts . . . have generally drawn from agency-law principles to hold that '[c]onduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.'" *Chesher*, 477 F.3d at 797 (citing *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App. 3d 83, 92 (Ohio Ct. App. 10th Dist. 1990)). "But, '[a]n employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of

10

employment.'" *Id.* (citing *Jackson v. McDonald*, 144 Ohio App. 3d 301, 306 (Ohio Ct. App. 5th Dist. 2001)). "The [Ohio Court of Appeals] in *Jackson* held that 'it is only where the acts of the state employees are motivated by actual malice or other situations giving rise to punitive damages that their conduct may be outside the scope of their state employment.'" *Id.* (citing *Jackson*, 144 Ohio App. 3d at 307).

As noted earlier, the operation of a county sheriff's office and the detention of individuals by a county sheriff are governmental functions. *See Whitler*, 123 Ohio App. 3d at 204-05 (citing *Twine*, 68 Ohio App. 3d at 55). As such, the Sheriff Defendants' detention of Plaintiff was within the scope of their employment. This remains true even if Plaintiff's detention and denial of bail was "unnecessary, unjustified, excessive or improper" as alleged by Plaintiff. Defendants' immunity is not abrogated by 2744.03(A)(6)(a).

Third, upon examination of the exception in 2744.03(A)(6)(b) - whether "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner" - this Court finds that Defendants maintain immunity.

With regard to wanton or reckless misconduct, "wanton misconduct is the failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 356 (Ohio 1994). Moreover, "[t]he standard for showing wanton misconduct is . . . high," *id.*, and "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Roszman v. Sammett*, 26 Ohio St. 2d 94, 96-97 (Ohio 1977). "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Fabrey*, 70 Ohio St. 3d at 356; *see also Vasquez v. Vill. of Windham*, 2006 Ohio App. LEXIS 6298, at \*\*19-21 (Ohio Ct. App.

11

11th Dist. 2006). "Reckless misconduct may be understood as synonymous with 'willful misconduct . . . [involving] a more positive mental state promoting the injurious act than does wanton misconduct.'" *Vasquez*, 2006 Ohio App. LEXIS 6298, at \*\*20 (citing *Hancock v. Ashenhurst*, 2004 Ohio App. LEXIS 2948, at \*\*10 (Ohio Ct. App. 10th Dist. 2004)). "As such, willful or reckless misconduct involve 'an intentional deviation from a clear duty or from a definite rule of conduct . . . ." *Id.* (citing *Tighe v. Diamond*, 149 Ohio St. 520, 527 (Ohio 1948)). Furthermore, the Sixth Circuit has explained that lynchpin of section (A)(6)(b) wantonness and recklessness is the explicit focus on the employee's state of mind. *Chesher*, 477 F.3d at 797.

In the case at bar, Plaintiff argues that there is a dispute as to whether Defendants acted "intentionally and tortiously [to] deprive the Plaintiff of liberty," and that the Sheriff Defendants' conduct can characterized as "wantonly reckless or worse." Doc. 8 at 12-14. However, conclusory statements alone are not enough to establish a genuine issue of material fact regarding wanton misconduct. Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris*, 201 F.3d at 802. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Instead, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)).

Plaintiff has failed to offer any specific facts showing that the Sheriff Defendants were "conscious that [their] conduct [would] in all probability result in injury," *Fabrey*, 70 Ohio St. 3d 351, 356, or that Defendants exhibited an "intentional deviation from a clear duty . . . ." *Vasquez*, 2006 Ohio App. LEXIS 6298, at \*\*20 (citing *Hancock*, 2004 Ohio App. LEXIS 2948, at \*\*10).

12

Indeed, Plaintiff has supported her insistence of "wantonly reckless misconduct" with nothing more than a characterization of Defendants' state of mind as such. *See* Doc. 8 at 13. Therefore, Plaintiff has not created a genuine issue of material fact regarding wanton and reckless misconduct.

With regard to bad faith and malicious conduct, Plaintiff has likewise failed to offer any specific facts. Plaintiff suggests that the manner in which Defendants enforced the bench warrant for Plaintiff's arrest may have been malicious or in bad faith. Doc. 8 at 2, 10, 13. Specifically, Plaintiff testified that she reported to the Sheriff's Office at 4:10 p.m., but was forced to wait until 4:30 - the time at which the courts close - until Defendants arrested her. Doc. 8 at 2; Doc. 8, Attachment 1, Exhibit 1, 4-5. Conversely, Defendant Sheriff Steyer testified that Plaintiff arrived at the Sheriff's Office "on or about" 4:30 p.m., and that she was arrested "after 4:30 p.m." Doc. 7, Attachment 6, Exhibit F; Doc. 7 at 4. However, even if the precise timeline remains in dispute, Plaintiff has not offered any facts showing that any delay in her arrest was because of a malicious or bad faith reason. As such, Plaintiff has not created a genuine issue of material fact regarding bad faith and malicious misconduct, and Defendants' individual capacity immunity is not abrogated by section (A)(6)(b), or any other exception in 2744.03.

### 3. Official Capacity Immunity

"Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. The Ohio Court of Appeals has held that an action against an officer in his 'official capacity' is simply another way of pleading an action against the governmental entity itself." *Chesher*, 477 F.3d at 797 (citing *Norwell v. City of Cincinnati*, 133 Ohio App. 3d 790, 803 (Ohio Ct. App. 1st Dist. 1999).

13

Therefore, in order to determine whether Defendants are immune in their official capacity, it must be determined whether the governmental entity - in this case, the political subdivision of Seneca County - is immune from suit. *See id.* at 797 (noting that "[i]f official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county").

"The Political Subdivision Tort Liability Act . . . sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Carter v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998). "First, [2744.02(A)(1)] sets forth the general rule of immunity, that political subdivisions [engaged in governmental or proprietary functions] are not liable in damages for the personal injuries or death of a person." *Id.*[1] "[O]nce immunity is established . . . the second tier of analysis is whether any of the five exceptions to immunity in [2744.02(B)] apply." *Id.* Finally, even if an exception applies, "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in [Ohio Rev. Code § 2744.03] applies." *Id.*

In the case at bar, this Court finds that Seneca County is immune from Plaintiff's claims as a political subdivision, and the defendants are therefore immune in their official capacities. First, Defendants were engaged in a governmental function as previously discussed. Second, none of

---

[1] Ohio Rev. Code § 2744(A)(1) states:
> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

14

the exceptions in 2744.02(B) apply.[2] Because none of the exceptions apply, there is no need to analyze the third step, and Defendants are immune from Plaintiff's claims in their official capacity.

### C. Federal Law Claims

Plaintiff asserts claims against Defendants under 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments for violating her civil rights by not allowing her to post bail. Doc. 7, Attachment 1, Exhibit A, 2, 18, 24; Doc. 8 at 7-8. The Sixth Circuit has held that "'inherent in our American concept of liberty' is the general existence of the right to bail." *Atkins v. Mich.*, 644 F.2d 543, 549 (6th Cir. 1981) (citing *Mastrian v. Hedman*, 326 F.2d 708, 710 (8th Cir. 1964)). "[I]f bail is denied, the denial must not violate the procedural standards developed from the due process clause." *Id.* at 711 (citing *United States ex rel. Shakur v. Comm'r of Corrections*, 303 F. Supp. 303 (S.D.N.Y. 1969), *aff'd*, 418 F.2d 243 (2d Cir. 1969), *cert. denied*, 397 U.S. 999 (1970)). However, Defendants argue that they are entitled to summary judgment on these claims because they are immunized by absolute quasi-judicial immunity. Doc. 7 at 1, 5-7; Doc. 9 at 2-4. "It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)); *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988)).

"Moreover, absolute judicial immunity has been extended to non-judicial officers who perform

---

[2] The (B)(1), (B)(3), and (B)(4) exceptions to immunity are clearly inapplicable. The (B)(2) exception is inapplicable because Defendants were not engaged in a proprietary function. *See Whitler*, 123 Ohio App. 3d 199, 204 (holding "detention in the county jail by the County Sheriff's Department . . . cannot be seen as being classified as a proprietary act under [Ohio Rev. Code § 2744.01(G)]). The (B)(5) exception is inapplicable because, as previously discussed, the Revised Code does not expressly impose civil liability on Seneca County.

'quasi-judicial' duties." *Id.* (citing *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986), *cert. denied*, 481 U.S. 1023 (1987); *Johnson v. Granholm*, 662 F.2d 449 (6th Cir. 1981), *cert. denied*, 457 U.S. 1120 (1982)). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989), *cert. denied*, 493 U.S. 956 (1989)). The underlying rationale for this immunity is that "officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function." *Id.* at 848. In other words, failure to immunize quasi-judicial actions "would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law." *Id.*

The Sixth Circuit has held that "enforcing or executing a court order is intrinsically associated with a judicial proceeding," thus entitling the enforcing officer to absolute quasi-judicial immunity. *Bush*, 38 F.3d at 848; Doc. 7 at 5. Defendants claim immunity because they arrested Plaintiff pursuant to a valid court order - the bench warrant. Doc. 7 at 6-7. Furthermore, Defendants assert that any acts or omissions during the subsequent seven day detention of Plaintiff resulted from a court order (1) which instructed them to "take and safely keep [Plaintiff] so that [they] have her body forthwith before this Court," and (2) which did not contain a bail provision. Doc. 7 at 7, Attachment 5, Exhibit E. As such, Defendants argue that Plaintiff's federal claims are barred by absolute quasi-judicial immunity because they all arise out of the enforcement of a valid court order.

It is true that Defendants are entitled to quasi-judicial immunity for enforcing the bench warrant against Plaintiff. However, Plaintiff is not seeking to impose liability for the enforcement

16

of the bench warrant. Doc. 8 at 4. Instead, Plaintiff seeks to impose liability for an alleged violation of the constitutionally secured right to bail. Defendants' obligation not to violate this right exists independent of their obligation to enforce the bench warrant at issue. As such, imposing liability for failure to meet this obligation cannot be construed as liability for enforcement of the bench warrant, and Defendants' absolute quasi-judicial immunity remains unimpeded.

Furthermore, this Court fails to see how imposing liability on Defendants for violating Plaintiff's constitutional right to bail could "result in the [Defendants] second-guessing the judge" or undermining "the integrity of the court's authority and ability to function." *Bush*, 38 F.3d at 848. In fact, it appears that the Ohio Legislature specifically required Defendants to allow Plaintiff to post bail whenever they were fulfilling the sort of court ordered obligations at issue here. Ohio Rev. Code § 2935.13, as cited above, provides a clear chain of officials to whom an arrestee must be taken "forthwith," beginning with the judge who issued the warrant, and providing alternatives all the way to the catchall "most convenient magistrate, clerk, or deputy clerk of a court of record." The Defendants, as arresting authorities, should have followed this process in order to ensure fair treatment of Plaintiff.

Moreover, as an Ohio Court of Appeals has stated, "[Ohio Criminal Rule] 46(D) mandates that persons arrested for minor misdemeanors shall not be jailed but instead be released by 'the officer in charge of the facility' upon the unsecured recognizance of the accused." *Ohio v. Holmes*, 1988 Ohio App. LEXIS 3532, at *8-9 (Ohio Ct. App. 5th Dist. 1988). This Court fails to understand how statutorily mandated tasks to be performed tandem with bench warrant execution could possibly offend the rationale of an immunity which seeks to "preserve the integrity of the

17

court's authority and ability to function" and prevent officials from second-guessing the judge . . . ." *Bush*, 38 F.3d at 848.

Therefore, Plaintiff's federal claims against the Sheriff Defendants are not blocked by absolute quasi-judicial immunity, and the Sheriff Defendants' motion for summary judgment on these claims must be denied.

**IV.	Conclusion**

For the reasons discussed herein, Defendants' motion for summary judgment is hereby granted in part and denied in part. (Doc. 7.) Summary judgment is granted in favor of Defendant Seneca County Sheriff's Office as to all claims. Summary judgment is granted in favor of Defendants Unknown Law Enforcement Officers as to state law claims. Summary judgment is denied as to federal claims against Defendants Unknown Law Enforcement Officers.

IT IS SO ORDERED.

                                                           s/ *David A. Katz*
                                                     DAVID A. KATZ
                                                     U. S. DISTRICT JUDGE