IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

HEATHER SHOBE,

                      Plaintiff,                      Case No. 3:07 CV 1783

    -vs-

                                                  MEMORANDUM OPINION

SENECA COUNTY SHERIFF'S
OFFICE, et al.,

                      Defendant.

KATZ, J.

This case is before the Court on Defendants Thomas Steyer, Mark Derr, Joe Cunningham, and Ronda Gipson's motion for summary judgment (Doc. 31). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part.

**I. Background**

    **A. Procedural History**

On May 17, 2007, Plaintiff Heather Shobe ("Plaintiff") commenced this action against Seneca County Sheriff's Office and other Unknown Law Enforcement Officers in the Ohio Court of Common Please for Seneca County. (Doc. 1 at Ex. A). On June 15, 2007, Defendants removed the suit to federal court. (Doc. 1 at 1). The Complaint alleged state law claims of negligence, false imprisonment, intentional infliction of emotional distress, and violations of Ohio Rev. Code § 2705.04. In addition, Plaintiff asserted claims against Defendants under 42 U.S.C. § 1983 and under the Fourth and Fourteenth Amendments for violating her civil rights. Defendants moved for summary judgment, and on February 13, 2008, this Court granted summary judgment

in favor of Defendant Seneca County Sheriff's Office as to all claims, and Defendants Unknown Law Enforcement Officers as to state law claims. *Shobe v. Seneca County Sheriff's Office*, 2008 WL 440582, \*10 (N.D.Ohio Feb.13, 2008). However, the Court denied summary judgment as to federal claims against Defendants Unknown Law Enforcement Officers. *Id.* Since that judgment, discovery has been ongoing.

On May 19, 2008, Plaintiff filed an Amended Complaint that names the Unnamed Law Enforcement Officers, and alleges violations under 42 U.S.C. § 1983 of her right to due process under the Fourteenth Amendment, and one state law claim. The named defendants are Sheriff Thomas Steyer, and Jail Administrators Mark Derr, Joe Cunningham, and Ronda Gipson. Defendants now move for summary judgment on the claims raised in Plaintiff's Amended Complaint.

**B. Facts**

On July 18, 2006, the Seneca County General Health District ("Health District") filed a Complaint against Plaintiff in the Seneca Count Court of Common Pleas for injunctive relief as the result of an occurrence unrelated to the matter before this Court. (Defendants' Ex. A). Plaintiff did not file an answer. On August 29, 2006, the Court of Common Pleas issued default judgment in favor of the Health District, and concluded that if Plaintiff failed to comply with the judgment, she would be found guilty of a minor misdemeanor. (Defendants' Ex. B). On November 30, 2008, the Court of Common Pleas issued a notice informing Plaintiff that she was accused of contempt of a court order and that a hearing on the matter of contempt would be held on December 13, 2006. (Defendants' Ex. D). On December 13, 2006, Plaintiff's failure to appear

2

caused the Court of Common Pleas to issue a bench warrant for Plaintiff's arrest. (Defendants' Ex. E). The warrant did not contain a bail provision.

On Friday, February 9, 2007, Plaintiff's boyfriend called Plaintiff at her work and said that a deputy was at the house with some paperwork for her. (Shobe Depo. at 27). Plaintiff called the Sheriff's Office and said that she would stop by after work to pick up the paperwork. (Shobe Depo. at 27). At about 4:10, Plaintiff arrived at the Sheriff's Office and spoke to the dispatcher, Cindy Feasel, who told Plaintiff about the bench warrant. (Shobe Depo. at 33-34). Between 4:20 p.m. and 4:30 p.m., a deputy met Plaintiff, gave her a copy of the warrant, and arrested Plaintiff. (Shobe Depo. at 36). She was booked at 4:38 p.m. by Tim Jenkins. (Shobe Depo. at Ex. B). Since the Seneca County Courts close at 4:30 p.m., a deputy from the Sheriff's Office completed the Return of Service the next business day, Monday, February 12, 2007. (Steyer Aff. at ¶ 8; Defendants' Ex. G.)

From the time she was incarcerated, Plaintiff claims that, whenever corrections officers checked on her, she asked "Why am I here and when do I get to go to court?" (Shobe Depo. at 45-46; Shobe Aff. at ¶ 6). One officer with blonde hair responded that the judge "could get [Plaintiff] in whenever," while other officers either did not respond or told her that they would find out later.[1] (Shobe Depo. at 45; Shobe Aff. ¶ 7).

---

[1] Defendants Cunningham and Gibson, respectively a shift supervisor and a jail administrator in February, 2007, claim not to know Plaintiff and to have never been informed that Plaintiff had a question regarding a hearing or court date. (Cunningham Aff. ¶¶ 1-4; Gibson Aff. ¶¶ 1-5). Nonetheless, Cunningham admits that "if an inmate has a question" it is his duty to "ensure that the appropriate provisions are made to respond to the inmate's concern." (Cunningham Aff. ¶ 2). Also, Gibson oversaw day to day operations at the jail. (Gibson Aff. ¶ 2).

3

Defendant Derr is the transportation supervisor for the Seneca County Jail. (Derr Aff. at ¶ 1). As a part of his job, when corrections officers notify Derr that an inmate is questioning a court date or wants to see a judge, Derr contacts the applicable courts on behalf of the inmate to attempt to either answer the inmate's question or to schedule a hearing. (Derr Aff. at ¶ 2). On either February 14 or 15, 2007, a corrections officer informed Derr that Ms. Shobe was asking about her hearing date. (Derr Aff. at ¶ 4). On the same day, Derr called Judge Kelbley's chambers to try and schedule a hearing for Plaintiff. (Derr Aff. at ¶ 4). The court instructed Derr to bring Plaintiff before the judge on February 15, 2007. (Derr Aff. at ¶¶ 4-5). When the prosecuting attorney did not appear on February 15, 2007, Judge Kelbley's chambers instructed Derr to take Plaintiff back to Seneca County Jail and return with her the following day. (Derr Aff. at ¶ 7; Shobe Depo. at 48).

On February 15, 2007, the Court of Common Pleas set a new bond hearing for February 16, 2007. (Shobe Depo. at Exhibit C). On February 16, 2007, Derr took Plaintiff to the Court of Common Please for her bond hearing. (Steyer Aff. ¶ 9; Derr Aff. ¶ 7; Shobe Depo. at 50). While at Court, Plaintiff reached a plea with the prosecutor and was released. (Shobe Depo. at 53-54, Shobe Depo. at Ex. D). By this time, Plaintiff had spent seven days in jail.

**II. Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'"

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

In her Amended Complaint, Plaintiff claims that the defendants failed to notify the court of her arrest and make her available for bail "without delay." The Amended Complaint alleges: (1) a violation under 42 U.S.C. § 1983 of her right to due process under the Fourteenth Amendment, and (2) a violation of R.C. 2705.04.

In Defendants' motion for summary judgment, Defendants argue that they are not liable because (1) Plaintiff has failed to demonstrate a claim against Defendants under 42 U.S.C. § 1983 in their official capacity because Plaintiff cannot demonstrate a violation of the Fourteenth Amendment, or a policy or custom that caused her alleged deprivation; (2) Defendants in their individual capacity are entitled to qualified immunity for Plaintiff's claim because Defendants acted reasonably; and (3) Defendants are immune from Plaintiff's state law claim under Ohio Revised Code Chapter 2744.

**A. 42 U.S.C. § 1983**

As a preliminary matter, the Court is cognizant of the distinction between Plaintiff's individual capacity and official capacity claims. Plaintiff's Amended Complaint states that "[t]he Defendants were acting as law enforcement officers in the scope of their employment for the Defendants at some times mentioned herein and at other times mentioned herein Defendants acted beyond the scope of their employment and acted under the color of law." Doc. 19 at ¶ 10. This Court has previously concluded that such language means that "Plaintiff is suing . . . Defendants in their individual capacities as well as in their official capacities." *Shobe*, 2008 WL 440582, \*3; *see Moore v. City of Harriman*, 272 F.3d 796, 771-772 (6th Cir. 2001) (explaining that a failure to explicitly state whether a defendant is sued under an official or individual capacity is not fatal so long as defendants received sufficient notice). However, before addressing the differences between these two claims, the Court shall address what is common to both.

For both individual capacity and official capacity claims under 42 U.S.C. § 1983, a plaintiff must present facts sufficient to show that the defendants, acting under color of state law, deprived her of a specific right or interest secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).

There is no question that Defendants were acting under color of state law. As a result, the Court must determine whether Plaintiff has submitted facts which, when taken in the light most favorable to her, demonstrate that Defendants violated a constitutionally protected right. *See Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Because Plaintiff asserts a failure to make Plaintiff available to post bail without delay, her claim must be examined under the Fourteenth Amendment.

7

The Fourteenth Amendment prohibits governmental actions which would deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]o establish a procedural due process claim pursuant to § 1983, [Plaintiff] must establish three elements: (1) that she has a life, liberty, or property interest protected by the Due Process Clause; (2) that she was deprived of this protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford her adequate procedural rights prior to depriving her of her protected interest. *Chandler v. Village of Chagrin Falls*, 2008 WL 4523585 at *4 (6th Cir. Oct. 8, 2008) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999)).

The first element is satisfied. Guidance from the Sixth Circuit and Ohio law suggest that Plaintiff's right to a bail hearing without delay is a liberty interest protected by the Due Process Clause.[2] The Ohio Constitution provides that all persons shall be bailable by sufficient sureties, except in certain extreme situations.[3] Ohio.Const. Art. I. § 9. Ohio Rev. Code § 2935.13 provides a clear chain of officials to whom an arrestee must be taken "forthwith," beginning with the judge who issued the warrant, and providing alternatives all the way to the catchall "most convenient magistrate, clerk, or deputy clerk of a court of record." Ohio Rev. Code § 2705.03, which is specific to contempt proceedings, states that a person charged with contempt has a right to be

---

[2] Liberty interests may be derived directly from the Due Process Clause or from an independent source such as state law. *See e.g. Washington v. Harper,* 494 U.S. 210, 221-22 (1990) (Due Process Clause creates liberty interest); *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974) (state law creates liberty interest).

[3] Such extreme situations include "a person who is charged with a capital offense where the proof is evident or the presumption great," and "a person who is charged with a felony where the proof is evident or the presumption great, and when a "person poses a substantial risk of serious physical harm to any person or to the community." Ohio.Const. Art. I. § 9.

heard. Ohio Rev. Code § 2705.04, also specific to contempt proceedings, creates a method to ensure that bail is set "without delay." It requires that "if the writ is not returnable *forthwith*, the court may fix the amount of bond. . . and when it is not convenient to hear the charge *without delay*, the court shall fix the amount of bond to be given. Ohio Rev. Code § 2705.04 (emphasis added). In *Atkins v. Mich.*, the Sixth Circuit explained that "'inherent in our American concept of liberty' is the general existence of the right to bail . . . and that if bail is denied, the denial must not violate the procedural standards developed from the due process clause" and that bail may not be denied arbitrarily. 644 F.2d 543, 549 (6th Cir. 1981) (citing *Mastrian v. Hedman,* 326 F.2d 708, 710-11 (8th Cir. 1964)).

The second and third elements are also satisfied. Plaintiff's liberty interest was violated and the state did not afford Plaintiff with adequate procedural rights prior to depriving her of her protected interest. Plaintiff was in jail for seven days until her bond hearing despite her repeated requests to see a judge. This occurred despite the Ohio state law scheme, explained above, that seeks to ensure that a bond is set for the accused as soon as possible. *See e.g. Rauch v. Stone*, 1979 WL 206892 at * 2 (Ohio App. 4 Dist. Oct. 26, 1979) (stating that "R.C.2705.04 expressly provides for bail if a contempt hearing cannot be promptly held").

However, the Courts analysis does not stop here. The court shall now separately address Plaintiff's individual capacity claim and the official capacity claim.

### 2. Individual Capacity

Defendants argue that they are entitled to summary judgment on this claim because they are immunized. The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their

9

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walsh v. Cuyahoga Cty.*, 424 F.3d 510, 513 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity involves a three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted)). If the answer to all three questions is "yes," qualified immunity is not proper. Regarding the first inquiry, the Court has already determined that a constitutional violation has occurred. Having concluded that Plaintiff's constitutional rights were violated, the Court turns to whether Plaintiff's right to bail was "clearly established."

A right is "clearly established" when it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987) (stating that qualified immunity applies unless "any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct"). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendants' position could have believed that his conduct was lawful, in light of

clearly established law and the information he possessed." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

The question as to whether the right to bail is clearly established has been taken up by district courts outside of the Sixth Circuit. They have reached different conclusions. In *Pyka v. Village of Orland Park*, 906 F.Supp. 1196, 1227-28 (N.D.Ill, 1995), the court concluded that the right to bail has never been established as a fundamental constitutional right under the federal law. The court explained that the Supreme Court could have, but failed to, decide the issue of whether the Eighth Amendment creates such a right in *Murphy v. Hunt*, 455 U.S. 478 (1982) and in *United States v. Salerno*, 481 U.S. 793 (1987). Such reasoning does not convince this Court that the right to bail without delay is not clearly established in the instant case in light of guidance from the United States Supreme Court explaining that, in order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.*"* *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In the instant case, such contours were sufficiently clear in light of the Ohio Constitution guaranteeing the right of bail in Plaintiff's situation, Ohio Rev. Code §§ 2705.04, 2935.13 which are a part of a scheme that ensures that a bond is set for the accused without delay, and Sixth Circuit precedent explaining that bail may not be denied arbitrarily, *Atkins,* 644 F.2d at 549. Furthermore, the *Pyka* court analyzed the right to bail within the context of the Eighth Amendment, rather than the Fourteenth.

At least one district court has concluded that "the law clearly established that a pre-trial detainee could not be detained for twelve days without being brought before a judge or allowed to pay bail" *Bunyon v. Burke County*, 285 F.Supp 2d, 1310, 1327 (S.D.Ga. 2003). The Court reasoned that Georgia statutes guiding law enforcement officers in their treatment of pre-trial

11

detainees were in force prior to the defendant's detention. *Id.*  A relevant Georgia statute required that an arrestee be brought before a judicial officer within 72 after the arrest.  *See* O.C.G.A. §§ 17-4-26, 17-6-1(b); *see also Watts v. Pitts*, 253 Ga. 501, 322 S.E.2d 252, 255 (1984).  The *Bunyon* court explained that "United States Supreme Court decisional law clearly established that when a state creates a liberty interest, the Due Process Clause of the United States Constitution protects that interest." 285 F.Supp 2d at 1327.  (citing *Meachum v. Fano*, 427 U.S. 215, 223 (1976); *Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989)).  This Court is in agreement with the *Buyon* court.  Similar to the twelve days the defendant was held in *Bunyon*, Plaintiff was held for seven days without being brought before a judge.  Also, similar to the 72 hour requirement in *Bunyon*, Ohio law requires an arrestee's case to be brought before a judicial officer "forthwith" and "without delay."  Such a liberty interest, created by the state, is protected by the Due Process Clause.  Furthermore, Defendants cannot be said to have been acting reasonably in the face of the violations of such clearly established law.  As a result, with regard to the individual capacity claim, Defendants motion is denied.

### 1. Official Capacity

Plaintiff brings official capacity claims against Steyer, Derr, Cunningham, Gibson.  Courts treat suits against municipal officials in their official capacity as suits against the municipality. *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  As a result, Plaintiff must show that a policy or custom played a part in the constitutional violation.  *Kentucky v. Grahm*, 473 U.S. 159, 166 (1985).  "A 'policy' is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect

to the subject matter in question." *Shorts v.* Bartholomew, 255 Fed.Appx. 46, 57 (6th Cir. 2007) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002); *see also* Brown v. Shaner, 172 F.3d 927, 930 (6th Cir. 1999). A "custom" is so permanent, widespread, or well-settled that it has the "force of law" and need not be formally approved. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996).

The Plaintiff does not allege, nor does the Court find that a policy or custom played a part in the constitutional violation. With regard to the official capacity claim, Defendants' motion for summary judgment is granted.

### B. R.C. 2705.04.

In Plaintiff's Amended Complaint, Plaintiff has asserted that Defendants violated Ohio state law R.C. 2705.04. This claim was dismissed from Plaintiff's original Complaint pursuant to Defendants' motion for summary judgment. Defendants are immune from Plaintiff's state law claims under Ohio Rev. Code § 2744. *Shobe*, 2008 WL 440582, at *5-8. Furthermore, both Defendants and Plaintiff agree that this claim should be dismissed. As a result, with regard to the state law claim, Defendants' motion is granted.

## IV. Conclusion

For the reasons stated herein, Defendants' motion for summary judgment (Doc. 31) is hereby granted with regard to the state law claim and the official capacity claim and denied with regard to the individual capacity claim.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE